UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| KAREN F.,<br><br>        Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of the Social Security Administration,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 2:22-cv-00798<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Karen F.[1] filed this action for judicial review[2] of the Commissioner of the Social Security Administration's decision denying her applications for disability insurance benefits under Title II[3] and supplemental security income under Title XVI[4] of the Social Security Act. The Administrative Law Judge ("ALJ") denied Ms. F.'s applications, finding she did not qualify as disabled.[5] Ms. F. argues the ALJ erred in his supportability and consistency analysis of the medical opinions of Dr. Maurine Cobabe, such that the ALJ's determination is unsupported by

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the court refers to Plaintiff by her first name and last initial only.

[2] (*See* Compl., Doc. No. 5; Opening Br., Doc. No. 16.)

[3] 42 U.S.C. §§ 401–434.

[4] *Id.* §§ 1381–1385.

[5] (Certified Tr. of Admin. R. ("Tr.") 18–37, Doc. Nos. 12, 13.)

1

substantial evidence.[6] The court[7] held a hearing on January 11, 2024,[8] and has carefully reviewed the record and the parties' briefs. Because the ALJ properly considered Dr. Cobabe's opinions and his findings are supported by substantial evidence, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of the Commissioner's final decision. This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[9] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[10]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[11] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[12] Substantial evidence is "such relevant evidence as a reasonable mind

---

[6] (Opening Br. 13–20, Doc. No. 16.)

[7] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 8.)

[8] (*See* Minute Entry, Doc. No. 29.)

[9] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[10] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[11] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[12] *Id.* at 1154 (internal quotation marks omitted).

might accept as adequate to support a conclusion."[13]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[14]  And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[15]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to result in death or last for at least twelve consecutive months.[16]  An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[17]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) she has the residual functional capacity to perform past relevant work; and

---

[13] *Id.* (internal quotation marks omitted).

[14] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[15] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[16] 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A).

[17] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[18]

The claimant has the burden, in the first four steps, of establishing disability.[19] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work in the national economy.[20]

## PROCEDURAL HISTORY

In 2019, Ms. F. applied for disability insurance benefits and supplemental security income, alleging disability beginning in 2009.[21] Ms. F. later amended her alleged disability onset date to July 5, 2018.[22] After an ALJ denied her applications, the Appeals Council remanded the case for additional proceedings.[23] On remand, the ALJ found Ms. F. not disabled, in a decision dated September 2, 2022.[24] At step two of the sequential evaluation, the ALJ found Ms. F. had the severe impairments of asthma, bipolar disorder, depressive disorder, generalized anxiety disorder, social anxiety disorder, panic disorder, personality disorder, post-traumatic stress disorder, alcohol use disorder, and cannabis use disorder.[25]

---

[18] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[19] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[20] *Id.*

[21] (*See* Tr. 445, 449.)

[22] (Tr. 18, 185.)

[23] (Tr. 184–96, 204–07.)

[24] (Tr. 18–37.)

[25] (Tr. 21.)

At step three, the ALJ first found Ms. F.'s impairments met an impairment listing when including substance abuse.[26] The ALJ then considered whether substance abuse was a contributing factor material to the disability determination.[27] The ALJ found that if Ms. F. stopped abusing substances, her remaining impairments would not meet or medically equal an impairment listing.[28] The ALJ also determined that if Ms. F. stopped abusing substances, she would have residual functional capacity ("RFC")[29] to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> [Ms. F.] must avoid even moderate exposure to pulmonary irritants. Additionally, she would be limited to simple, routine, and repetitive tasks, in a work environment free of fast-paced production requirements, involving only simple work-related decisions, few workplace changes, and only occasional interaction with the public, co-workers, and supervisors.[30]

At step four, the ALJ found Ms. F. had no past relevant work. But at step five, considering Ms. F.'s age, education, work experience, and RFC, the ALJ found Ms. F. would be capable of performing other work in the national economy if she stopped substance abuse.[31] Consequently,

---

[26] (Tr. 22–26.)

[27] (*See* Tr. 26–36); *see also* 20 C.F.R. §§ 404.1535, 416.935.

[28] (Tr. 26–28.)

[29] A claimant's RFC is the most she can do in a work setting considering her limitations. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996). The ALJ considers all relevant medical and other evidence in the record. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

[30] (Tr. 28.)

[31] (Tr. 35–36.)

the ALJ found her substance abuse was a contributing factor material to the disability determination, and, therefore, she was not disabled.[32]

The Appeals Council denied Ms. F.'s request for review,[33] making the ALJ's decision final for purposes of judicial review.

## ANALYSIS

Ms. F. argues the ALJ improperly evaluated Dr. Maurine Cobabe's opinions, resulting in an RFC unsupported by substantial evidence.[34]

Under the applicable regulations, an ALJ must assess the persuasiveness of medical opinions based on the following factors: (1) supportability (the extent to which the opinion is supported by underlying medical evidence and explanations); (2) the consistency of the opinion with other medical and non-medical sources; (3) the relationship with the claimant (including the length, frequency, purpose and extent of the relationship, and whether it was an examining relationship); (4) any specialization; and (5) any other relevant factors.[35] The most important factors are supportability and consistency, and the ALJ is required to explain how he evaluated those two factors.[36]

---

[32] (Tr. 36–37.)

[33] (Tr. 1–4.)

[34] (*See* Opening Br. 13–20, Doc. No. 16.)

[35] 20 C.F.R. §§ 404.1520c(b), (c)(1)–(5), 416.920c(b), (c)(1)–(5). These regulations are applicable to claims filed after March 27, 2017, like Ms. F.'s. *See id.* §§ 404.1520c, 416.920c.

[36] *See id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

Dr. Cobabe was Ms. F.'s treating physician during the relevant time period.[37] On a mental capacity assessment form dated March 4, 2021,[38] Dr. Cobabe opined Ms. F. had extreme limitations in certain abilities, including her ability to work at an appropriate and consistent pace, complete tasks in a timely manner, sustain an ordinary routine and regular attendance at work, and handle conflicts with others.[39] She opined Ms. F. had marked limitations in her ability to recognize a mistake and correct it, identify and solve problems, use reason and judgment to make work-related decisions, ignore or avoid distractions while working, work a full day without needing more than the allotted number or length of rest periods during the day, cooperate with others, and ask for help when needed.[40] Dr. Cobabe also found mild and moderate limitations in other areas.[41] Dr. Cobabe stated Ms. F. had a history of substance abuse but had been sober for many months; however, "years of substance abuse [had] altered her psychological functioning and delayed psychological development of coping skills."[42]

On a mental impairment questionnaire dated February 28, 2022,[43] Dr. Cobabe again opined that Ms. F. had extreme or marked limitations in many of the same areas, and mild or moderate limitations in others.[44] Dr. Cobabe stated Ms. F. had used alcohol in the past but

---

[37] (*See* Tr. 13.)

[38] (Tr. 6411–13.)

[39] (Tr. 6412–13.)

[40] (Tr. 6411–13.)

[41] (*Id.*)

[42] (Tr. 6413.)

[43] (Tr. 6405–08.)

[44] (*Id.*)

"neither it or any other substances appear to be the driving force behind her impairments."[45] Dr. Cobabe indicated Ms. F. had been "sober from alcohol and medicinal ketamine [for] several months with no improvements in symptoms."[46]

The ALJ found these opinions persuasive at step three when considering whether Ms. F.'s impairments, including substance abuse, met a listing.[47] With respect to supportability, the ALJ found the opinions were supported by Ms. F.'s diagnoses of PTSD, borderline personality disorder, social anxiety disorder, generalized anxiety disorder, depression, and a history of substance abuse.[48] The ALJ also found the opinions supported by the explanations Dr. Cobabe provided on the forms regarding Ms. F.'s symptoms and frequency of treatment.[49] With respect to consistency, the ALJ found the opinions consistent with examination records indicating Ms. F. presented "as depressed, anxious, tearful, labile and dramatic with pressured, rapid and hyperverbal speech, tangential, preservative and ruminating thought processes, loose associations, and was inattentive with impaired insight and judgment."[50] The ALJ relied on these opinions in finding Ms. F.'s impairments, including substance abuse, met a listing.[51]

---

[45] (Tr. 6407.)

[46] (*Id.*)

[47] (Tr. 23–25.)

[48] (Tr. 24–25.)

[49] (*Id.*)

[50] (*Id.* (citing Tr. 646, 659, 834, 899, 6606–07, 6617, 6637).)

[51] (*See* Tr. 22–25.)

However, the ALJ found Dr. Cobabe's opinions unpersuasive when considering Ms. F.'s RFC if she stopped abusing substances.[52] The ALJ still found Dr. Cobabe's opinions supported by Ms. F.'s diagnoses and the explanations Dr. Cobabe provided on the forms.[53] However, the ALJ found the opinions inconsistent with Ms. F.'s treatment records during periods of sobriety.[54] The ALJ stated those treatment records did not demonstrate Ms. F. was as limited as opined.[55] Specifically, the ALJ noted that upon examination, Ms. F. was "anxious with a mildly constricted affect," but was "appropriately groomed, alert and oriented with intact memory, logical and goal-directed thought process, intact associations, intact attention, and fair insight and judgment."[56]

This record demonstrates the ALJ properly evaluated the persuasiveness of Dr. Cobabe's opinions under the applicable legal framework, including articulating how he considered the factors of supportability and consistency. Further, his findings are supported by substantial evidence. Ms. F. specifically challenges the ALJ's finding, when considering Ms. F.'s RFC in the absence of substance abuse, that Dr. Cobabe's opinions were inconsistent with Ms. F.'s treatment records during periods of sobriety.[57] The ALJ cited three treatment records from other

---

[52] (*See* Tr. 28, 32–34.)

[53] (*See* Tr. 33–34.)

[54] (*Id.*)

[55] (*Id.*)

[56] (*Id.* (citing Tr. 1813, 1851, 1962, 5819, 5858).)

[57] (*See* Opening Br. 15–20, Doc. No. 16.)

9

providers in December 2020 and January and February 2021,[58] which indicated no recent drug or alcohol use for several months.[59]  As the ALJ noted, mental status examinations from these records indicated Ms. F. was "anxious with a mildly constricted affect" but was otherwise appropriately groomed, alert and oriented, and had intact memory, logical and goal-directed thought process, intact associations, intact attention, and fair insight and judgment.[60]  These records contrast with treatment records during periods of active drug and alcohol use cited by the ALJ at step three, in finding Dr. Cobabe's opinions persuasive when considering Ms. F.'s impairments including substance abuse.[61]  Specifically, the ALJ cited six treatment records from 2018 to 2022 which noted active or recent drug or alcohol use and indicated Ms. F. presented as depressed, anxious, tearful, labile, dramatic, and inattentive, with pressured, rapid, and hyperverbal speech; tangential, preservative, and ruminating thought processes; loose associations; and impaired insight and judgment.[62]  Taken together, all these cited treatment records support the ALJ's finding that although Dr. Cobabe's opinions were consistent with Ms. F.'s presentation while using substances, Ms. F. was not as limited as Dr. Cobabe opined during periods of sobriety.  These records constitute substantial evidence supporting the ALJ's findings regarding the persuasiveness of Dr. Cobabe's opinions.

---

[58] (*See* Tr. 33–34 (citing Tr. 1813, 1851, 1962).)  The ALJ cited two additional pages from the medical record, (Tr. 5819, 5858), but these pages are duplicates of the other cited records, (Tr. 1813, 1851).

[59] (*See* Tr. 1813, 1851.)

[60] (*See* Tr. 1813, 1851, 1962.)

[61] (*See* Tr. 24–25 (citing Tr. 646, 659, 834, 899, 6606–07, 6617, 6637).)

[62] (*See* Tr. 646, 659, 899, 6606–07, 6617, 6637.)  The ALJ cited one additional page from the medical record, (Tr. 834), but this page is a duplicate of another cited record, (Tr. 646).

Ms. F. notes that Dr. Cobabe found she had marked and extreme mental limitations even in the absence of substance abuse.[63] But the consistency factor requires the ALJ to compare a medical opinion with evidence from *other* sources.[64] Here, the ALJ found Dr. Cobabe's opinions were inconsistent with other medical providers' observations of Ms. F.'s presentation during periods of sobriety. Thus, the fact that Dr. Cobabe indicated her opinions related to periods of sobriety does not undermine the ALJ's finding that the opinions were inconsistent with other providers' records during periods of sobriety.

Ms. F. also argues the medical records the ALJ cited as inconsistent with Dr. Cobabe's opinions are "cherry-picked," and she points to other medical records during periods of sobriety which she contends are consistent with Dr. Cobabe's assessment.[65] But although the record may contain evidence supporting a different conclusion, the court may not reweigh the evidence or substitute its judgment for the ALJ's.[66] Where, as here, substantial evidence supports the ALJ's findings, those findings will not be disturbed.[67]

Finally, Ms. F. argues the ALJ's findings were based on improper lay interpretation of the record.[68] But nothing in ALJ's decision suggests he made any improper lay interpretation of medical evidence. The consistency factor required the ALJ to compare Dr. Cobabe's opinions

---

[63] (*See* Opening Br. 15, Doc. No. 16; *see also* Tr. 6407, 6413.)

[64] *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[65] (Opening Br. 15, 17–19, Doc. No. 16.)

[66] *See Lax*, 489 F.3d at 1084; *Langley*, 373 F.3d at 1118.

[67] *See Biestek*, 139 S. Ct. at 1153.

[68] (Opening Br. 15–16, Doc. No. 16.)

with other medical evidence in the record.[69] The ALJ was merely fulfilling this obligation in discussing examination records from other providers.[70] Further, the ALJ cited the medical providers' observations and descriptions of Ms. F.'s presentation during examinations—not his own interpretation of raw medical data.[71]

For all these reasons, Ms. F. has demonstrated no error in the ALJ's consideration of Dr. Cobabe's opinions. The record shows the ALJ properly considered these opinions, and his findings are supported by substantial evidence.

## CONCLUSION

The Commissioner's decision is affirmed.

DATED this 16th day of January, 2024.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge

---

[69] *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[70] *See Trujillo v. Colvin*, 626 F. App'x 749, 753 (10th Cir. 2015) (unpublished) (finding an ALJ was merely carrying out his obligation to assess a medical expert's opinion by evaluating other medical evidence, including other medical sources' examination records).

[71] *See Neal v. Comm'r, Soc. Sec. Admin.*, 782 F. App'x 722, 724 (10th Cir. 2019) (unpublished) (finding an ALJ did not make an improper lay interpretation of medical evidence where the ALJ did not interpret raw medical data or step into the shoes of a medical examiner).